UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL TAN-GUTIERREZ,<br><br>                          Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                          Respondents. | Case No.: 3:26-cv-00152-RBM-BJW<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Docs. 1, 2]** |

Pending before the Court are Petitioner Miguel Tan-Gutierrez's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition") (Doc. 1) pursuant to 28 U.S.C. § 2241 and Motion and Memorandum of Law in Support of Temporary Restraining Order ("TRO Motion") (Doc. 2). The Petition and TRO Motion seek the same relief: Petitioner's release from detention and an order enjoining Respondents from removing Petitioner to a third country unless they provide him with written notice and a meaningful opportunity to raise fear-based claims. (Doc. 1 at 13–14; Doc. 2 at 2–7.)[1] For the reasons set forth below, the Petition is **GRANTED**.

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

1

# I.     BACKGROUND

## A.     Factual Background

Petitioner is a native and citizen of Cuba. (Doc. 1 at 17–18 [Declaration of Miguel Tan-Gutierrez] ¶ 1.) He applied for admission to the United States on April 22, 2017 at a port of entry in Texas. (Doc. 7-2 [Declaration of Deportation Officer Authur McLaughlin ("McLaughlin Decl.")] ¶ 3.) United States Citizenship and Immigration Services issued him a Notice to Appear on May 5, 2017, charging him with inadmissibility under Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i) as a noncitizen not in possession of a valid entry document. (*Id.* ¶ 4.) On October 2, 2017, Petitioner was issued a final order of removal to Cuba. (*Id.* ¶ 5 (citing Doc. 7-1).)

On November 3, 2017, "Petitioner was released from ICE custody on an Order of Supervision due to an inability to repatriate him to Cuba." (*Id.* ¶ 6.) On November 5, 2025, Petitioner was re-detained at his required check-in with ICE in Miami, Florida. (*Id.* ¶ 7.) According to Officer McLaughlin's sworn declaration, Petitioner was provided an informal interview and a Notice of Revocation of Release at the time of his re-detention. (*Id.*) The Notice of Revocation of Release stated: "This decision has been made based on a review of your file and/or your personal interview on account of the changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." (Doc. 7-1 at 4.)

On December 16, 2025, the Cuban government declined to accept Petitioner for repatriation. (McLaughlin Decl. ¶ 9.) ICE then sought to remove Petitioner to Mexico. (*Id.* ¶ 10.) On January 8, 2026, the Mexican government also declined to accept Petitioner. (*Id.* ¶ 11.) "Petitioner's case is assigned to the Miami Field Office and Miami [Enforcement and Removal Operations] will attempt to identify a third country that may be willing to accept Petitioner for removal." (*Id.* ¶ 12.) "Once a third country is identified, ICE will provide Petitioner with written notice, and if Petitioner claims a fear of removal to the identified country, he will be referred to an asylum officer for processing of the fear-based claims." (*Id.* ¶ 14.)

3:26-cv-00152-RBM-BJW

**B.    Procedural Background**

Petitioner filed the Petition and TRO Motion on January 11, 2026.  (*See* Docs. 1, 2.)  On January 12, 2026, the Court ordered Respondents to show cause why the Petition and TRO Motion should not be granted by filing a written response.  (Doc. 3.)  On January 20, 2026, Respondents filed their Response in Opposition to Petitioner's Habeas Petition and Application for Temporary Restraining Order ("Response").  (Doc. 7.)  On January 21, 2026, Petitioner filed his Traverse ("Reply").  (Doc. 8.)

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

## III.    DISCUSSION

Petitioner argues that: (1) his detention unlawfully violates the regulations in 8 C.F.R. §§ 241.4(l) and § 241.13(i); and (2) due process and the Convention Against Torture ("CAT") prohibit ICE from removing him to a third country "without adequate notice and an opportunity to be heard."  (Doc. 1 at 6–12.)[2]  Respondents argue that: (1)

---

[2]  The Petition also contains a passing reference to *Zadvydas v. Davis*, 533 U.S. 678 (2001).  (*See* Doc. 1 at 6.)  But the Petition makes no argument regarding *Zadvydas* and Respondents did not have an opportunity to respond to such arguments in their Response. Therefore, the Court does not consider Petitioner's more detailed *Zadvydas* arguments in his Reply.  (*See* Doc. 8 at 5); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.")

3

3:26-cv-00152-RBM-BJW

ICE complied with the requirements of §§ 241.4 and 241.13, but even if it did not, Petitioner has not established prejudice; (2) Petitioner's challenge to "ICE's decision to detain him for the purpose of removal . . . is precluded by [8 U.S.C. § 1252(g)];" and (3) Petitioner's concerns regarding third-country removal are unwarranted because ICE will provide him with written notice and refer him to an asylum officer for processing of any fear-based claims regarding that country.  (Doc. 7 at 2–6.)

For the reasons discussed below, the Court finds that: (1) jurisdiction is not precluded by 8 U.S.C. § 1252(g); (2) Respondents violated the regulations in §§ 241.4(l) and 241.13(i); and (3) Respondents must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country.

**A.     Jurisdiction**

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments.  *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Respondents argue that the Court cannot hear this Petition because 8 U.S.C. § 1252(g) precludes jurisdiction.  (Doc. 7 at 6.)  This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]."  8 U.S.C § 1252(g).  The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order.  Rather, he challenges "only violations of ICE's mandatory duties under statutes, regulations, and the Constitution."  (Doc. 8 at 9.)  He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order."  *Garcia v. Noem*, — F. Supp.

4

3:26-cv-00152-RBM-BJW

3d —, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *see also United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Therefore, § 1252(g) does not strip the Court of jurisdiction.

**B.     Agency Regulations**

The detention and release of noncitizens who are subject to a final order of removal are governed by 8 U.S.C. § 1231. Under that statute, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days," also known as the "removal period." 8 U.S.C § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(3). Those regulations, which govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. §§ 241.4 and 241.13. These regulations permit revocation of release only if the appropriate official "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future" and makes that finding "on account of changed circumstances." § 241.13(i)(2). And "[u]pon revocation," the noncitizen "will be notified of the reasons for revocation of his or her release or parole" and will be given "an initial informal interview promptly after his or her return to Service custody" to "respond to the reasons for revocation stated in the notification." § 241.4(l)(1); § 241.13(i)(3).

**1.     Regulatory Violations**

Petitioner argues that Respondents violated all of these requirements in revoking Petitioner's release. (Doc. 1 at 6–9.) Respondents attest that Petitioner was given an informal interview along with the written Notice of Revocation of Release, and that even if they failed to comply with the regulations, Petitioner has not established prejudice. (Doc. 7 at 4–5.) The Court need not resolve the dispute regarding whether Petitioner received an

5

interview because Respondents also failed to notify Petitioner of the reasons for revocation of his release, provide him an opportunity to respond to those reasons, or determine that his release should be revoked "on account of changed circumstances."

Under the circumstances here, the Court concludes that Petitioner was not provided adequate notice of the reasons for revocation of his release. ICE's conclusory explanation for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview." *Diaz v. Wofford*, Case No. 1:25-CV-1079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.")). The document Respondents point to as evidence of notice indicate that there was "a review of [Petitioner's] file" and that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 7-1 at 4.) But "[s]imply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." *Sarail A. v. Bondi*, — F. Supp. 3d —, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition . . . ." *Id.* (emphasis in original); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No. 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition where the petitioner "could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons").

Furthermore, it does not appear that ICE determined that there was a significant likelihood of removal in the reasonably foreseeable future "on account of changed circumstances." § 241.13(i)(2). Respondents point to two potential changed circumstances: (1) "recent developments in international relations between the United States and several other countries have made probable ICE's removal of immigrants, like

Petitioner, that it previously was unable to remove;" and (2) ICE "has worked diligently to execute his removal first to Cuba, then to Mexico." (Doc. 7 at 3.) Neither of these explanations addresses whether Petitioner's removal in the reasonably foreseeable future was significantly likely. Respondents concede that they have been unable to remove Petitioner to Cuba since 2017 (McLaughlin Decl. ¶ 6), and they have not "attempted to show why obtaining a travel document [to Cuba was] more likely this time around." *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). Respondents also "failed to secure travel documents, or alleged potential for travel documents, for Petitioner [for Mexico] *before* his re-detention." *Arostegui-Campo v. Noem*, Case No.: 25-CV-3064 JLS (MMP), 2025 WL 3280886, at *4 (S.D. Cal. Nov. 25, 2025). Indeed, Respondents only sought to remove Petitioner to Mexico after Cuba refused to accept him. (McLaughlin Decl. ¶ 9.) "[T]his post-hoc rationalization cannot form the basis of 'changed circumstances' for the purpose of re-detention." *Arostegui-Campo*, 2025 WL 3280886, at *4 (collecting cases).

### 2. Prejudice

Respondents argue that even assuming ICE violated agency regulations, Petitioner "has not established prejudice nor a constitutional violation." (Doc. 7 at 4–5 (citing *Brown v. Holder*, 763 F. 3d 1141, 1148–50 (9th Cir. 2014) ("[T]he mere failure of an agency to follow its regulations is not a violation of due process."); *United States v. Tatoyan*, 474 F.3d 1174, 1178 (9th Cir. 2007) ("Compliance with . . . internal [customs] agency regulations is not mandated by the Constitution.")).) The Court disagrees.

"[T]here are, for present purposes, two types of regulations: (1) those that protect fundamental due process rights, and (2) [ ] those that do not." *United States v. Raya-Vaca*, 771 F.3d 1195, 1205 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). "A violation of the first type of regulation . . . implicates due process concerns even without a prejudice inquiry." *Id.* (holding that where "the regulation violation . . . constituted a denial of [the defendant's] right to notice and an opportunity to respond, no showing of prejudice [was] necessary to establish a due process

violation"). "There can be little argument that ICE's requirement that noncitizens be afforded an informal interview . . . derives from the fundamental constitutional guarantee of due process." *Ceesay v. Kurzdofer*, 781 F. Supp. 3d 137, 165 n.26 (W.D.N.Y. 2025). Accordingly, Respondents' violation "implicates due process concerns even without a prejudice inquiry." *Raya-Vaca*, 771 F.3d at 1205.

But even if that were not the case, Petitioner suffered sufficient prejudice. In the immigration context, "violation of a regulation does not invalidate a deportation proceeding unless the regulation serves a purpose of benefit to the [noncitizen]," *i.e.*, the violation "prejudiced interests of the [noncitizen] which were protected by the regulation." *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). ICE's failure to comply with the requirements of §§ 241.4 and 241.13 "prejudiced interests of [Petitioner] which were protected by the regulation[s]." *Id.* Both regulations were intended "to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). As discussed above, ICE deprived Petitioner of these due process protections. "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Hernandez v. Sessions*, 872 F.3d 976, 995, 1000 (9th Cir. 2017) (holding that "[u]nlawful detention" by immigration officials constituted "irreparable harm"). Therefore, Petitioner was prejudiced by ICE's failure to comply with its own regulations.

Government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations."). Most district courts have "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Rokhfirooz v. LaRose*,

3:26-cv-00152-RBM-BJW

— F. Supp. 3d —, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025); *see, e.g.*, *K.E.O. v. Woosley*, Civil Action No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025) (noting "courts across the country have ordered the release of individuals" in ICE custody where ICE "violated their own regulations"). This Court reaches the same conclusion: because ICE violated its own regulations when it revoked Petitioner's release, the Petition is **GRANTED**.

**C.     Third Country Removal**

Petitioner also claims that "ICE's policies threaten his removal to a third country without adequate notice and an opportunity to be heard," in violation of the Fifth Amendment and CAT. (Doc. 1 at 9–12.) Respondents claim that Petitioner's concern "is not borne out by the evidence in this case" because ICE attests that it "will provide Petitioner with written notice, and if Petitioner claims a fear of removal to the identified country, he will be referred to an asylum officer for processing of the fear-based claims." (Doc. 7 at 5.)  Because Respondents actively seek to remove Petitioner to a third country (*id.* at 3; McLaughlin Decl. ¶ 12), the Court disagrees with Respondents.  *See G.A.A. v. Chestnut*, Case No. 1:25-cv-01102-EPG-HC, 2025 WL 3251316, at *7 (E.D. Cal. Nov. 21, 2025) ("Despite [the respondents'] assurances that . . . ICE fully understands that prior to removal to [a third country, the petitioner] must be provided notice, an opportunity to claim fear, and, if a fear is claimed, an opportunity to have that claim adjudicated," there is still "a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal") (quoting *Y.T.D. v. Andrews*, Case No. 1:25-CV-01100 JLT SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sept. 18, 2025)).

Petitioner attaches as an exhibit the July 9, 2025 memo from ICE Director Todd Lyons ("ICE Memo") titled "Third Country Removals Following the Supreme Court's Order in *Department of Homeland Security v. D.V.D.*, No. 24A1153 (U.S. June 23, 2025)." (Doc. 1 at 40.)  The ICE Memo reads:

> If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be

persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible. . . .  In all other cases, ICE must comply with the following procedures:

- An ERO officer will serve on the alien the attached Notice of Removal.  The notice includes the intended country of removal and will be read to the alien in a language he or she understands.

- ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.

- ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.

- Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.

- If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.

- If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT).  USCIS will generally screen the [noncitizen] within 24 hours of referral.

(Doc. 1 at 21–22 (emphasis in original).)

10

3:26-cv-00152-RBM-BJW

As several courts have held, the policies in the ICE memo are "contrary to Ninth Circuit precedent." *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen*, 796 F. Supp. 3d at 727 (quoting *Aden*, 409 F. Supp. 3d at 1009). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

The court in *Esmail v. Noem* analyzed how the policies in the ICE Memo "present due process issues." Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). First, when the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured . . . the alien may be removed *without the need for further procedures*." *Id.* at *7 (emphasis in original). Because "the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims, this approach is insufficient." *Id.* (cleaned up). Second, when the third country has not provided such assurances, ICE "will not affirmatively ask whether the alien is afraid of being removed to that country." *Id.* This "forces the noncitizen to assert a right he may not know that he has," which "'violates both INS regulations and the constitutional rights to due process.'" *Id.* (cleaned up) (quoting *Andriasian*, 180 F. 3d at 1041). This Court finds the reasoning and conclusion in *Esmail* persuasive and adopts them here. *Accord Nguyen*, 796 F. Supp. 3d at 728–29 (granting preliminary injunction because the petitioner was "likely to succeed on his claim that removal to a third country under ICE's

current policy, without meaningful notice and reopening of his removal proceedings for a hearing, would violate due process"); *Nadari v. Bondi*, 2:25-cv-07893-JLS-BFM (C.D. Cal. Sept. 3, 2025), ECF No. 9, at *5–6 (same).

Accordingly, because Respondents violated 8 C.F.R. §§ 241.4 and 241.13 and must provide Petitioner with adequate notice and an opportunity to be heard before removing him to a third country, the Petition is **GRANTED**.

## IV.   CONCLUSION

For the foregoing reasons, the Petition (Doc. 1) is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision.

2. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, Civil Action No. 25-10676-BEM, 2025 WL 1453640 (D. Mass. May 21, 2025).[3]

3. The TRO Motion (Doc. 2) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATE:  January 26, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[3]  This relief has been granted in similar matters.  *See Louangmilith v. Noem*, — F. Supp. 3d —, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025); *Y.T.D.*, 2025 WL 2675760, at *13; *Kumar v. Wamsley*, CASE NO. C25-2055-KKE, 2025 WL 3204724, at *9 (W.D. Wash. Nov. 17, 2025).

3:26-cv-00152-RBM-BJW